[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
For a year in 1988 and 1989, the plaintiff Ellen Plasil and the defendant, Linda Tablemen, were practicing law together in a partnership known as Plasil and Tablemen with an office at 50 North Street in Danbury. Ellen Plasil dissolved the partnership on April 17, 1989. Two lawsuits then were brought in this Judicial District CT Page 4716 concerning the dissolution. The first was Tablemen v. Plasil No. CV89 028334 filed May 1, 1989. The second was Plasil v. Tablemen No. CV89 028379 filed May 5, 1989. The problems arising out of the dissolution were settled by a judgment entered in the case of Tablemen v. Plasil on May 12, 1989 and by an Agreement between the parties dated May 8, 1989.
In her Post Trial Brief in this above entitled case Ellen Plasil on page 6 claims concerning the other two cases:
 "It is undisputed that such litigation was resolved by a written agreement entered into between the parties dated May 8, 1989 which was, in turn, made part of a stipulation for judgment entered on the record on May 12, 1989 by the Honorable Philip Mancini in both actions."
If Ellen Plasil was claiming that all the provisions the agreement of May 8, 1989 were incorporated into the said Judgment, the court does not agree and finds specifically that the 2 cases referred to in paragraph 7 of the agreement were not so made part of the Judgment. The court also notes that the transcript of the proceedings before Judge Mancini specifically states:
 "The stipulation is for winding up and termination of the partnership, termination as of May 14, 1989."
Paragraph 6 of the agreement of May 8, 1989 reads in part:
 "All cases will remain with and become the property of the partner who is currently handling the file, and any fees received hereinafter will be the sole property of that attorney except as set forth below in Paragraph 7. . . ."
Paragraph 7 of the agreement of May 8, 1989 reads:
 "Notwithstanding anything to the contrary, Linda S. Tablemen and Ellen Plasil agrees to split equally the attorney's fees received; less documented out-of-pocket costs (not to include overhead expenses or salaries) on the cases of Wolke v. Waterbury Hospital and Perez v. Blomquist. Wolke will be managed solely by CT Page 4717 and all decisions thereon will be made by Ellen Plasil; Perez will be managed solely by and all decisions thereon will be made by Linda S. Tablemen."
At the time the agreement was made, it appeared that both cases could result in substantial fees to the attorney handling the individual cases. Neither attorney was aware that there was a weakness in the Wolke case.
Thereafter Ellen Plasil did a great deal of work in the Wolke case including depositions and travel to Washington, D.C. However, it ultimately developed in the summer of 1990, that there was a problem of contributory negligence in the case. Then in July 1990, with the client's approval, the Wolke case was withdrawn.
Linda Tablemen settled the Perez case in January 1992 and received a fee of $125,000 for her services as the attorney in the matter. Ellen Plasil claims she is entitled to one half of that fee of $125,000 by reason of paragraph 7 of the Agreement between the parties and brought this action on February 9, 1991 against Linda Tablemen and her husband Stephen to recover her claim shared of the $125,000.
Count Six of her complaint is headed (Breach of Contract: Defendant Linda Tablemen). Paragraphs 25 and 26 of this Count reads:
 "25. Defendant Linda Selby Tablemen has breached and continues to breach the terms of the parties written Settlement Agreement dated May 8, 1989 and the parties court Stipulation of May 12, 1989.
 21. As a result of such breach, Plaintiff has been damaged."
Linda Tablemen has set up 3 Special Defenses to the claims made in Count Six — Failure of Consideration; Fraud; and Public Policy.
The first Special Defense reads:
FIRST SPECIAL DEFENSE: (Failure of Consideration) CT Page 4718
 1. At the time the written agreement referenced in Paragraphs 7, 8, 9, 10, and 11 of the Complaint was entered into, the Plaintiff had full knowledge that the case of Wolke v. Waterbury Hospital was completely worthless.
 2. Subsequent to the written agreement, the Plaintiff withdrew the Wolke case without receiving any payment.
 3. Said written agreement is, therefore, void for failure of consideration.
The court finds as a fact that Ellen Plasil did not know that the Wolke case was completely worthless. Her actions after the agreement of May 8, 1989 and before the case was withdrawn convinces the court that she believed the case had merit and she was devoting much time and effort in preparing the case to go to trial.
The First Special Defense therefore has no merit.
The Second Special Defense reads:
SECOND SPECIAL DEFENSE: (Fraud)
 1. At the time of the making of the written agreement, the Plaintiff had exclusive knowledge of the deficiency in said Wolke case, but failed to make any disclosure to the Defendant Linda Selby Tablemen.
 2. The Defendant Linda Selby Tablemen relied on the misrepresentations and material omissions of the Plaintiff in entering said written agreement.
 3. As a result of such misrepresentations and fraud, the Defendant Linda Selby Tablemen has been damaged.
The court finds as a fact that Ellen Plasil did not know that there was a deficiency in the Wolke case. Again, if she had known of any such deficiency, she would not have done the work described above concerning the First Special Defense.
The Second Special Defense therefore has no merit. CT Page 4719
The Third Special Defense reads:
THIRD SPECIAL DEFENSE: (Public Policy)
 1. The written agreement to allow the Plaintiff to share as much as 50% of the fee in the Perez case violates public policy.
 2. The Code of Professional Conduct allows an attorney to share a fee only in direct proportion to the work performed and responsibility exercised in the matter.
 3. The Plaintiff did not perform any professional services nor responsibility with respect to the Perez case; the Defendant Linda Selby Tablemen performed all of the legal services.
 4. The Plaintiff, prior to the written agreement, received $33,333 as a legal fee from an earlier partial settlement of the Perez case.
 5. Any further sharing of a legal fee from the Perez case is violative of public policy.
The merits of this defense was discussed at length in Ellen Plasil's Brief dated March 22, 1993 beginning on page 66. The court adopts the reasoning of Ellen Plasil in the matter and therefore finds that the Third Special Defense has no merit.
Set-Off
When the partnership between Ellen Plasil and Linda Tablemen was formed, Stephen Tablemen, Linda's husband, lent the partnership $15,000. The obligation of the partnership to Stephen Tablemen was solved in the Agreement dated May 8, 1989 by paragraph 3 of that Agreement. It reads:
 3. Ellen Plasil will be provided an amortization schedule for the loan to Stephen Tablemen on May 14, 1989. On said date, Ellen Plasil shall pay to Linda Tablemen the sum of $7,871.56 as her share of the passbook money market account which account was opened with a loan from Stephen Tablemen in the amount of $15,000.00. Ellen Plasil will receive $7,871.56 from the CT Page 4720 passbook money market account also, and agrees to repay her one-half of the loan from Stephen Tablemen, the current balance being approximately $6,475.00, in equal monthly installments of $156.60. Ellen Plasil agrees, further, to provide a note to Stephen Tablemen in the aforementioned approximate amount of $6,475.00 payable in said monthly installments but with the further condition that upon settlement of the case of Perez v. Blomquist, the remaining balance on the note will be immediately paid from Ellen Plasil's share of the attorney's fees recovered in that case in accordance with paragraph 7, below.
Ellen Plasil made payments on the note until January 1991 leaving an outstanding balance of $3,930.29 due. After January 1991, interest would accrue on that note, according to the brief of the defendants, p. 41, at the rate of 9.25%.
According to the above agreement, whatever balance is owed "will be immediately paid from Ellen Plasil's share of the attorney fees. . . ".
Counterclaim
The First Count of the Counterclaim states that Ellen Plasil sought and obtained an ex parte real estate attachment and garnishment of assets of the defendant Stephen Tablemen, that as a result of the garnishment both defendants were deprived of his wages from February 1, 1991 to April 11, 1991, that the court dismissed the complaint for insufficiency of service and vacated the prejudgment garnishment of the wages of the defendant Stephen Tablemen and that this prejudgment garnishment of his earnings and wages was an abuse of process as to both defendants.
The evidence about this situation was that the defendant Stephen Tablemen had to take out a loan of $5,000. The only damages the court can see that he sustained would be the interest he will have to pay on the $5000 until it was repaid which obviously would have been done as soon as his garnishment wages were returned to him. What the amount of that interest was does not appear on the record.
The Second Count of the Counterclaim states that Ellen Plasil failed to disclose to Linda Tablemen of the deficiency in the Wolke case which Ellen Plasil knew of, that Linda Tablemen relied on said CT Page 4721 misrepresentations and omissions of Ellen Plasil in making the agreement of May 8, 1989 and as a result she has been damaged.
Ellen Plasil's knowledge of the claimed deficiency in the Wolke case was discussed above and the court found that she had no such knowledge of any such deficiency in the case.
The court does not find that the defendants suffered any damages as claimed in this counterclaim.
Judgment accordingly may enter on the complaint and on the set off for Ellen Plasil to recover of Linda Tablemen $62,500 minus $3930.29 plus whatever interest accrued on said amount from January 1991, and on the counterclaim for Ellen Plasil together with interest and costs.
THOMAS J. O'SULLIVAN, TRIAL REFEREE